CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction of rape and sentence to imprisonment for fifteen years.
Appellant’s counsel strenuously argues that the evidence was insufficient to support the verdict of the jury. No question as to identity is involved; no question as to penetration is involved. The sole question of fact is whether defendant committed the act “forcibly and against the consent” of the alleged victim. Code of Alabama 1975, § 13-1-131.
According to the undisputed evidence of either the alleged victim or the defendant, *1213 the only two eyewitnesses as to the transaction between them on the night of September 30,1978, she boarded the automobile he was driving in the Roebuck area of Birmingham about 6:00 P.M. They went together through an edge of the downtown section of Birmingham to the See’s Lounge in the Ensley area of Birmingham. Considerably later that night defendant drove her to where she was living, a home with her foster mother in the Gate City area of Birmingham.
The victim testified that she boarded defendant’s automobile at the point of a gun held by defendant, that though she did not scream or actively seek protection, she submitted to his threats, that she was afraid to make an outcry at See’s Lounge as she was in a section unfamiliar to her, that after leaving See’s Lounge defendant drove to a convenience store and “went in there and got something and came on back out” in about five minutes and then drove to the area of Daniel Payne College, where “he turned off onto this little dirt road” and stopped close to it. She left the automobile and started running. He followed her. He caught her as she fell in a hole and hurt her ankle. He had a gun in his hand and told her to quit acting “like a damn fool.” With considerable details, unnecessary to be repeated here, she testified that he ravished her. She steadfastly denied any consent express or implied.
Defendant testified that the victim flagged him down, that she voluntarily proceeded with him in his automobile, to See’s Lounge and to the convenience store. He said he recognized her as a girl he had known. He said that instead of taking her to the area of Daniel Payne College, he took her to his apartment in the Five Points West area of Birmingham, that while there they drank and danced and engaged in sexual intercourse.
In appellant’s brief, it is stated:
“The jury obviously believed the victim’s story more than they believed that of the Appellant.”
We agree. Whether the jury was right or wrong is not for us to say. Although there was ample evidence to support a conclusion that defendant’s testimony was more credible than the victim’s, the determination by the jury was well within its province, a province that we have no right to invade. The jury had the opportunity to observe and hear both witnesses as they testified. Each juror had the right to take into consideration the appearance of each of the eyewitnesses as he (she) testified, the disparity in age — the alleged victim seventeen years old and defendant about thirty-five— the difference between the familiarity of one and that of the other as to the environs of the area in which the major part of the transactions between them that night occurred, and the difference between them, if any, in worldly wisdom.
The foster mother of the alleged victim was called as a witness for the defense. The significance of her testimony is rather vague, but defendant’s counsel developed by her testimony that there was some acquaintance between members of her family and members of defendant’s family, that defendant’s mother had come to her some time before the alleged crime and had sought the witness’ aid in helping her in behalf of defendant who “was in serious trouble.” During the interrogation of the witness on direct examination, she testified:
“Q. O.K. Mrs. _, is it a fair categorization to say that you are a type of a faith healer or a person that prays with people? [emphasis supplied]
“A. I pray for people, sir.
“Q. All right.
“A. And I lay hand on the people and God do the healing. I cannot claim no healing of my own.”
Further interrogation of the witness and her answers disclose that the first time she saw defendant, after the incident made the basis of the prosecution herein, was when she, while accompanied by the alleged victim, saw defendant at a parking lot in downtown Birmingham. Her testimony continued as follows:
“Well, now this was all before September 30th?
*1214 “A. No. She said, Mama, she said that’s the man that raped me. I said, are you sure? She said, Mama, I’m sure.
“Q. Excuse me, Ma’am. I didn’t ask you that. I’m asking you if that was before September 30th?
“A. No. When she was raped, you mean?
“Q. Have you ever — first of all, Judge, would you instruct her to stay away from the categorization of rape so I won’t have to stop every question.
“THE COURT: That’s a very difficult thing to do with this witness.
“Q. O.K. Mrs._, on the two occasions that you saw Mrs. -[de-
fendant’s mother] how did she get to your house?
“A. She said the lady was a friend of hers.”
Appellant urges that the last quoted statement of the trial court constituted erroneous action of the trial court prejudicial to the defendant. Neither party purports to give any explanation of the unique way in which the trial judge responded to the also unique request of defendant’s counsel, but we can see nothing substantially prejudicial to defendant in the statement the court made or in its failure to respond categorically to “instruct” the witness “to stay away from the categorization of rape” so that defendant’s counsel would not “have to stop every question.” The transcript shows that defendant’s attorney, not the same attorney representing him on the appeal, continued his direct examination of the witness and that thereafter there was no repetition of her “categorization” of the incident between defendant and the alleged victim as “rape.” The word “rape” is not found in any of the remainder of the testimony of the witness.
We have discussed the only issue raised by appellant. In our search of the record for any error prejudicial to defendant, in accordance with our duty pursuant to Code of Alabama 1975, § 12-22-240, we have some concern as to the following portion of the transcript of the proceedings during the closing argument of counsel for the State:
“MR. HODGES: Miss_[the alleged victim] wasn’t supposed to be out that time of night. She wasn’t supposed to be out on Saturday night. She was supposed to come home to her Mama because her Mama was worried about her.
“MR. COLEE: I object. There was no testimony about that whatsoever. Not a single witness testified to that fact, and I object.
“THE COURT: I must confess I don’t remember any, either.
“MR. HODGES: I didn’t say that, Judge. Am I not entitled to my version of the story?
“THE COURT: But provided it’s based on the evidence. The law says you can argue the evidence. But you can’t argue something that’s not even in the evidence. I understand that to be the law. Maybe you don’t, but I do.
“MR. HODGES: Well, are you overruling that?
“THE COURT: I am certainly not overruling it. I’m sustaining his objection.”
Although it is our view that there was no testimony that the victim “wasn’t supposed to be out that time of night . wasn’t supposed to be out on Saturday night . . . was supposed to come home to her Mama because her Mama was worried about her,” we are not fully convinced that counsel for the State was purportedly arguing or attempting to argue such statements as a matter of fact as distinguished from what he deemed to be a reasonable inference from some of the testimony. If the former, it was not proper argument; if the latter, it was. We view it as a borderline situation. By his statement, “I didn’t say that, Judge. Am I not entitled to my version of the story,” it is made reasonably clear to us that he did not intend his argument as a statement of fact but as a reasonable inference from the evidence, but we are not confident that he made such point clear to the trial court or that there was a meeting of the minds of the two on the subject. Furthermore, we are not confident that the argument to which the ob *1215 jection was made sufficiently showed in and of itself that counsel was not injecting into his argument claimed facts extraneous to the evidence as distinguished from inferences that counsel deemed could have been reasonably drawn from the evidence.
One reason for a constantly recurring difficult problem whether a particular statement of counsel in argument constitutes a purported statement of a fact in evidence on the one hand or, on the other hand, a statement of counsel’s view as to the existence of an inference from the evidence of such a fact, is that often only the one making the argument knows with certainty whether he means the one or the other. If counsel in the instant case had prefaced his argument with a statement, such as “It is submitted to you that it is reasonably inferable from the evidence and that it should be inferred from the evidence,” there probably would have been no objection, and no ruling of the court would have been required. Although to us it seems that State’s counsel disavowed his argument as a statement of fact, there was some ambiguity in what he said in justification of his argument. We do not have a copy of his entire argument or that of its context immediately before or immediately after the statement. Under all the circumstances, we conclude that reversible error is not chargeable to the trial court as to the matter.
We find no error in the record prejudicial to defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.